**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:25-cv-23806-BB

ALBERONICK VALSAINT,

      Plaintiff,

v.

JAMES W. UTHMEIER, *et al.*,

      Defendants.

_____/

## <u>REPORT AND RECOMMENDATIONS</u>

**THIS CAUSE** is before the Court on Plaintiff's second Motion for Leave to Proceed in forma pauperis. (ECF No. 13). This matter was referred to the undersigned United States Magistrate Judge for a report and recommendations by the Honorable Beth Bloom, United States District Judge. (ECF No. 18). For the following reasons, I respectfully **RECOMMEND** that the Motion be **DENIED** and that Plaintiff's Amended Complaint, (ECF No. 4), be **DISMISSED**, **without prejudice**.

## I.    BACKGROUND

Plaintiff, a Miami resident, brings suit against James W. Uthmeier, in his official capacity as the Attorney General of the State of Florida, and Katherine Fernandez-Rundle, in her official capacity as the Miami-Dade County State Attorney. The Complaint broadly alleges that the named Defendants have for sixteen years carried on a "coordinated and unlawful campaign" against Plaintiff. The Amended Complaint declares that Defendants have for years acted through state and federal agencies and employees to deprive Plaintiff of "his federally protected rights, including the

1

rights to equal protection, due process, free speech, employment, housing, travel, privacy and access to public services." (ECF No. 13 at 5–6).

Plaintiff alleges that he first notified Defendants of the present lawsuit in July 2024, when he sent Defendants a notice stating that "a lawsuit will be filed with the Southern District Court of Florida's Clerk's Office if the Defendants do not comply with the Plaintiff's settlement demand by August 30, 2024." (ECF No. 4 at 5). Defendants did not respond to the notice. Plaintiff filed this action in federal court over a year later, in November 2025, asserting jurisdiction under 42 U.S.C. § 1983, 42 U.S.C. § 1981, and the *Ex Parte Young* doctrine.

Plaintiff alleges that Defendants acted to "systematically blacklist" him from over 400,000 employment opportunities at the federal, state, and local level over the course of sixteen years; that Defendants orchestrated the denial of Plaintiff's passport renewal application by the United States Department of State, the revocation of Plaintiff's driver's license by the Florida Department of Highway Safety and Motor Vehicles, the denial of Plaintiff's applications for Medicaid and SNAP benefits by the Florida Department of Children and Families, the denial of health insurance coverage by the Department of Children and Families and the federal government, and the denial of Plaintiff's unemployment benefits by the Florida Department of Economic Opportunity; and that Defendants "engaged in unauthorized surveillance and illegal wiretapping of Plaintiff's personal communications" and exposed his personal information to "third-party data brokers and cyber criminals." *See* (ECF No. 4 at 6–9).

Plaintiff brings claims against the two named Defendants under the First Amendment (Counts I, II); the Fourth Amendment (Counts III, IV); the Fifth Amendment's Due Process Clause (Counts V, VI); the Eighth Amendment (Counts VII, VIII); the Fourteenth Amendment (Counts IX, X); Interference with Employment Opportunities under Title VII of the Civil Rights Act of

1964, 42 § 2000e (Count XI); and the Thirteenth Amendment (Count XII). Plaintiff maintains that Defendants acted under color of state law in effectuating each constitutional violation asserted in the Amended Complaint. Plaintiff seeks compensatory and punitive damages in the amount of $61,000,000 and a declaratory judgment as to each Count of the Amended Complaint. Plaintiff further seeks permanent injunctive relief preventing further discriminatory, retaliatory, and unconstitutional policies and practices and requiring: (a) facilitation of Plaintiff's passport renewal, (b) restoration of Plaintiff's eligibility for housing and employment benefits, (c) cessation of surveillance and data misuse, (d) expungement of false and unlawful state records against Plaintiff, (e) reinstatement of Plaintiff's Florida driver's license, (f) restoration of Plaintiff's healthcare eligibility, and (g) reversal of "any illegal actions put forth by Defendants that blocked Plaintiff." (ECF No. 4 at 45–46).

## II.    LEGAL STANDARD

Under Section 1915(e), "court[s] shall dismiss [a] case at any time if the court determines that . . .  the action or appeal . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief," notwithstanding any filing fee or portion thereof that may have been paid.  28 U.S.C. § 1915(e)(2)(B); *see also Mehmood v. Guerra*, 783 F. App'x 938, 940 (11th Cir. 2019) ("[U]nder § 1915(e), district courts have the power to screen complaints filed by all IFP litigants, *prisoners and non-prisoners alike*.") (emphasis added).

The standard for dismissal under Federal Rule of Civil Procedure 12(b)(6) governs a dismissal under § 1915(e)(2)(B)(ii).  *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997). Dismissal under Rule 12(b)(6) is appropriate when the facts as pled do not state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 555 U.S. 662, 678 (2009).  In addition, section

1915 requires dismissal when the legal theories advanced are "indisputably meritless," *Neitzke v. Williams*, 490 U.S. 319, 327 (1989); when the claims rely on "clearly baseless" factual allegations, *Denton v. Hernandez*, 504 U.S. 25, 32 (1992); or when the plaintiff ostensibly has little or no chance of success, *Bilal v. Driver*, 251 F.3d 1346, 1349 (11th Cir. 2001).

Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Estelle v. Gamble*, 429 U.S. 97, 106 (1979) (internal quotations and citations omitted). In determining whether to dismiss a *pro se* plaintiff's complaint, the allegations are taken as true and are construed in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although a plaintiff is not held to a high standard in a motion to dismiss for failure to state a claim, the Federal Rules require "a short and plain statement" of the claim that will give the defendant fair notice of the plaintiff's claim and the grounds it rests upon. *See* Fed. R. Civ. P. 8(a); *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001). Moreover, "[u]nder § 1915(e)(2)(B)(ii), a district court must dismiss a case in which the plaintiff is proceeding in forma pauperis if the court determines that the complaint fails to state a claim on which relief may be granted." *Wright v. Miranda*, 740 F. App'x 692, 694 (11th Cir. 2018). Although district courts must liberally construe *pro se* pleadings, courts are not required to rewrite complaints to create a viable cause of action where one does not otherwise exist. *GJR Invs. v. Cnty. of Escambia*, 132 F. 3d 1359, 1369 (11th Cir. 1998) *overruled on other grounds by Ashcroft*, 556 U.S. 662 (2009).

## III.    DISCUSSION

The Amended Complaint is a shotgun pleading and requires dismissal for failure to satisfy Federal Rule of Civil Procedure 8(a). Rule 8(a) requires "a short and plain statement of the claim

showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Rule 8(d)(1) requires that each allegation levied "be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). Plaintiff's Amended Complaint does not meet these minimum pleading standards. The Eleventh Circuit has set forth substantial guidance on "shotgun pleadings," identifying four categories thereof:

> Though the groupings cannot be too finely drawn, we have identified four rough types or categories of shotgun pleadings. The most common type—by a long shot— is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

*Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321–23 (11th Cir. 2015) (footnotes omitted). "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323. "Courts in the Eleventh Circuit have little tolerance for shotgun pleadings." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018). A district court may dismiss a complaint as a shotgun pleading on that basis alone. *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1357 (11th Cir. 2018) (citing *Weiland*, 792 F.3d at 1320).

Plaintiff's Amended Complaint meets *Weiland*'s definition of a shotgun pleading in at least the second and fourth respects set forth above. The Complaint is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Weiland*, 792 F.3d

at 1321–23. In particular, conclusory allegations as to Defendants' responsibility for Plaintiffs' injuries permeate the Amended Complaint.

Consider, for example, Plaintiff's claim that Defendants systematically blacklisted him from various job markets. Plaintiff complains that in the past sixteen years he has "submitted well over 400,000 job applications," including to federal, state, and local government jobs, without receiving a single offer of employment. (ECF No. 4 at 33). Plaintiff attributes the denial of these hundreds of thousands of applications to Defendants, declaring that such denial constitutes employment discrimination motivated by discriminatory animus. (*Id.* at 6) (alleging that "Defendants have abused their governmental power, overstepped their boundaries and abused their discriminatory practices to systematically blacklist [ ] Plaintiff from employment opportunities"). Plaintiff's allegations are conclusory in that he fails to allege how the denial of his hundreds of thousands of job applications is attributable to Defendants' official-capacity conduct or to any policies or practices maintained by Defendants, their respective offices, or other Florida State agencies. Indeed, Plaintiff's Complaint does not *identify* a policy or practice abused by Defendants.

Similar or identical deficiencies affect each Count asserted in the Amended Complaint. Plaintiff states legal conclusions without setting forth, for the Court's analysis, basic facts identifying who did what, when, under what circumstances, and to what injurious effect. Further, even where set forth in conclusory terms, certain of Plaintiff's claims directly contradict each other. For instance, Plaintiff alleges that he has been jobless "[a]t all times relevant" to this action, (ECF No. 4 at 26), yet elsewhere alleges that he "worked for some people who never paid him" for "14 to 16 hours a day just to get paid for 8 hours at minimum wage." (*Id.* at 36). Other of Plaintiff's allegations border on the fanciful: Plaintiff alleges that he has applied to almost half a million jobs and that Defendants bear responsibility for each application's denial. Still other allegations

approach maliciousness: Plaintiff, likening his injury to the imposition of modern-day slavery, levies *ad hominem* insults degrading non-party government employees who he asserts have facilitated his maltreatment. No well-pleaded factual allegations elucidate the grounds upon which such insults are predicated.

Globally, Plaintiff's Amended Complaint fails to allege facts elucidating how Defendants Uthmeier and Fernandez-Rundle, in their respective official capacities as Florida State Attorney General and Miami-Dade County State Attorney, wielded the power of various State and even Federal agencies to cause Plaintiff harm. The Amended Complaint declares that it is Defendants who masterminded the misconduct complained of, ranging from the Florida Department of Children and Families' denial of his health insurance coverage to the denial of his passport renewal by the Department of State.[1] Plaintiff acknowledges that Defendants "compris[e] various state agencies, their employees, and affiliated individuals," (ECF No. 4 at 5), including but not limited to the Florida Department of Highway Safety and Motor Vehicles, the Florida Department of Children and Families, the Florida Department of Economic Opportunity, and the Florida Department of Revenue. (ECF No. 4 at 39). Plaintiff must either allege non-conclusory facts that, taken as true, substantiate his assertions that Defendants effectuated his injury through government entities over which they lack legal authority or name those parties whom he believes actually did harm him.

The Amended Complaint constitutes a shotgun pleading and fails to meet the requirements of Federal Rule of Civil Procedure 8(a). As such, Plaintiff's Motion for Leave to Proceed in forma pauperis is due to be denied, and his Amended Complaint is due to be dismissed, with leave to amend. Upon amendment of his complaint, Plaintiff should be mindful of the need to clearly and

---

[1] Indeed, it is the federal government—specifically, the Bureau of Consular Affairs at the U.S. Department of State—that is empowered to issue and deny passports. *See* 22 C.F.R. § 51.1 *et seq*.

concisely plead non-conclusory factual allegations supporting his legal claims. So too should Plaintiff be cognizant that the Eleventh Amendment limits what relief he might obtain if he were to succeed on his claims.

Plaintiff is suing Defendants Uthmeier and Fernandez-Rundle in their official capacities. Naming a government official in their official capacity is the functional equivalent of naming the government entity itself. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (explaining that official-capacity claims against an officer are "simply another way of pleading an action against an entity of which an officer is an agent"). The Eleventh Amendment bars damages suits against a state in federal court, absent a waiver of immunity by the state or a valid federal congressional override. *Graham*, 473 U.S. at 169; *Wusiya v. City of Miami Beach*, 614 F. App'x 389 (11th Cir. 2015). Congress has not abrogated the states' sovereign immunity for purposes of section 1983 suits for damages. *Cross v. State of Ala.*, 49 F.3d 1490, 1503 (11th Cir. 1995) (internal marks and citations omitted). Nor has Florida waived its immunity in such regard. *Gamble v. Fla. Dep't of Health & Rehab. Servs.*, 779 F.2d 1509, 1512, 1520 (11th Cir. 1986); *Brown v. Fla. DOR Off. of Child Supp. Enf't*, 697 F. App'x 692, 692 (11th Cir. 2017). State officials may be sued in an official capacity where a suit alleges a constitutional violation by the official, acting in their official capacity, and seeks *only* prospective injunctive relief. *Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011); *Ex Parte Young*, 209 U.S. 123, 155–56 (1908).

Plaintiff seeks both damages and injunctive relief. (ECF No. 4 at 45–46). Plaintiff may not seek damages on his official-capacity claims. *See Ferrer v. Deandre*, No. 23-cv-24699, 2023 WL 8878220, at *2 (S.D. Fla. Dec. 22, 2023) (Bloom, J.) (screening complaint on motion for leave to proceed in forma pauperis and dismissing claims for monetary damages asserted against official-

capacity defendants); *Pennington v. Centurion Health, Inc.*, No. 23-cv-14206, 2023 WL 4763222, at *3 (S.D. Fla. Jul. 26, 2023) (denying, in pertinent part, motion for leave to proceed in forma pauperis with leave to amend, concluding that the "[p]laintiff cannot advance an official capacity claim against any [d]efendant if he also wants to seek monetary damages, so the Court must dismiss all of [the plaintiff]'s official capacity claims").

## III.    CONCLUSION

For the foregoing reasons, the undersigned respectfully **RECOMMENDS** that Plaintiff's Application to Proceed in forma pauperis be **DENIED**, **without prejudice**, and that under 28 U.S.C. § 1915(e) the Amended Complaint be **DISMISSED** with leave to amend as set forth herein.

A party shall serve and file written objections, if any, to this Report and Recommendations with the Honorable Beth Bloom, United States District Judge, within **FOURTEEN (14) days** of being served with a copy of this Report and Recommendation.  Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions."  11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**RESPECTFULLY SUBMITTED** in Chambers at Miami, Florida, this 11th day of March, 2026.

_____
LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE

9